

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

GROVER SELLERS
~~WILXXXXXXN~~
ATTORNEY GENERAL

Hon. Stansell Bryan
Criminal District Attorney
McLennan County
Waco, Texas

Dear Sir:                    Opinion No. O-7318

                             Re: Whether or not it is lawful
                                 for a member of the Texas
                                 State Legislature to work for
                                 the United States Public Health
                                 Service as a Supervisor of
                                 Typhus Control.

        Your letter of recent date requesting an opinion from
this department on the above subject matter is as follows:

        "I would appreciate it if you would advise me
whether or not it is lawful for a member of the
Texas State Legislature to work for the United States
Public Health Service as a Supervisor of Typhus Con-
trol, provided such member of the Legislature does
not draw a federal salary while the Legislature is in
session."

        In answer to our letter requesting certain information
concerning the position mentioned in your inquiry, we received
the following from the United States Public Health Service:

        "1.  Mr. Sam Sellers was employed off of a
regular Civil Service Register by the Federal Gov-
ernment with a classification of Engineering Aide,
SP-5.

        "2.  His title of classification was Engineering
Aide, SP-5, when he was employed, and he still held
that same position when he resigned.  His duties were
to work with a dusting crew on our Typhus Program.

        "3.  He received a salary from the Federal Gov-
ernment and not from the State Government.

        "4.  Yes, he took an oath of office the same
as all other Federal employees when entering on duty.

"Mr. Sellers resigned this position on June 21 1946."

Article 16, Section 12, of our State Constitution provides as follows:

"No member of Congress <u>nor person</u> holding <u>or exercising</u> any <u>office of profit or trust under the United States</u>, or either of them, or under any foreign power <u>shall be eligible as a member of the Legislature</u> or hold or exercise any office of profit or trust under this State."

It is generally held that the most important characteristic which distinguishes an office from a position is that the creation and conferring of an office involves the delegation to the individual some of the sovereign functions of government. See 34 Texas Jurisprudence, pp. 322-326; Mechem on Public Offices, § § 4-10; Kimbrough v. Barnett, 93 Tex. 310, 55 S.W. 122; and Commissioners Court of Limestone County v. Garrett (Commission of Appeals) 236 S.W. 970.

We quote the following from the Limestone County case:

"'The most important characteristic which distinguishes an office from an employment or contract is that the creation and conferring of an office involves a delegation to the individual of some of the sovereign functions of government, to be exercised by him for the benefit of the public; that some portion of the sovereignty of the county, either legislative, executive or judicial, attaches, for the time being, to be exercised for the public benefit. * * * In distinguishing between an office and an employment, the fact that the powers in question are created and conferred by law is an important criterion. For, though an employment may be created by law, it is not necessarily so, but is often, if not usually, the creature of contract. A public office, on the other hand, is never conferred by contract, but finds its source and limitations in some act or expression of the governmental power. * * * Public officers are usually-required by law to take the oath of office, and this fact goes far in determining the character of the duty. But the taking of the oath is not an indispensable criterion, and the office may exist without it, for, as has been said, the oath is a mere incident and constitutes no part of the office. * * * If a duty be a continuing one, which is defined by rules prescribed by the government, and not by contract, which an individual is appointed by gov-

ernment to perform, who enteres on the duties pertaining to his station without any contract defining them, if those duties continue though the person be changed, it seems very difficult to distinguish such a charge or employement from an officer. * * * At the same time, however, this element of continuance cannot be considered as indispensable, for, if the other elements are present, it can make no difference whether there be one act or a series of acts to be done, whether the office expires as soon as the one act is done, or is to be held for years, or during good behavior.' Mechem on Public Officers, 8 8  4 to 8.

"'Public office is the right, authority, and duty created and conferred by law by which, for a given period either fixed by law or enduring at the pleasure of the creating power, an individual is vested with some portion of the sovereign functions of the government to be exercised by him for the benefit of the public.' The correctness of this definition is nowhere questioned, so far as we know, and it is useless to add supporting authorities.' Kimbrough v. Barnett, 93 Tex. 310, 55 S.W. 122.

"'A man is none the less a public officer where his authority is confined to narrow limits; for it is the duty of his office and the nature of that duty which make him an officer, and not the extent of his authority.'" Mechem on Public Officers, 8 9.

We have carefully considered the duties of the position of Federal Engineering Aide, SP-5 in the light of the foregoing authorities and it is our opinion that such position does not constitute an <u>office</u> of profit or trust under the United States, but constitutes a <u>position</u> of profit or trust under the United States.

We call your attention, however, to Section 33 of Article 16 of our State Constitution which provides in part as follows:

"The Accounting Officers of this State shall neither draw nor pay a warrant upon the Treasury in favor of any person, for salary or compensation as agent, officer or appointee, <u>who holds at the same time any other</u>  office or <u>position</u> of honor, trust or <u>profit, under</u> this State or <u>the United States</u>, except as prescribed in this Constitution."

There are certain exceptions provided in the foregoing

Section which, however, are not material to the question under consideration.

Our Opinion No. 0-2607 in construing Section 33 of Article 16, stated the following:

"It is clear that this section does not seek to prohibit the serving of the State by one individual in more than one capacity. The provision addresses itself only to the matter of compensation. Thus, a man may hold two offices, or an office and a position of honor and trust under the State, if no compensation attaches to either place. But if he holds an office, or is an agent or appointee, and to such place compen sation attaches, he may not be paid for services rendered in that capacity during the period of time that he holds another position of honor or trust under the State or the United States. From this general statement as to what the section does and does not prohibit, we gather the general policy embodied therein. This policy seems obviously to be that no person should receive compensation from the State for services to be rendered it, when during the time such compensation is to be earned such person, by accepting and holding another position under the State or the United States, has obligated himself to render services in connection with the latter position, so that he may not render full value in the first capacity for the compensation which the State has agreed to pay. So construed, we find that the Section is but one of the many in the Constitution seeking to place every conceivable safeguard about the expenditure of State monies. So construed, this Section seeks to avoid even the possibility that the State may not receive a full quid pro quo for expenditures by way of compensation for services to be rendered in one capacity, by reason of the person serving in that capacity placing himself in such a position that he may be tempted to neglect the duties of the one place for the responsibilities of the other."

We quote the following from our Opinions No. 0-5317:

"If the place in the Federal Civil Service is an 'Office', then, upon accepting and qualifying therefor the member of the Legislature will automatically forfeit and vacate his office as member of the Texas Legislature, perforce of the provisions of the Constitu-

tion, Article 16, Sec. 12.  If the place in the Federal Civil Service is not an 'office' but a 'position' of 'honor , trust or profit', then, under Sec. 33, the member of the Legislature could not be compensated as such if, over the period for which compensation as a member of the Legislature was claimed, he also held the place in the Federal Civil Service.  Since members of the Legislature are paid per diem only for the days during which the Legislature is in session, the member of the Legislature would not prejudice his right to compensation as such if he held the position in the Federal Civil Service only during periods in which the Legislature was not in session.  Sec. 33 deprives the officer, agent or appointee of the right to be compensated with respect only to the period during which he holds another office or position of honor, trust or profit."

In view of the foregoing, it is our further opinion that a Legislator cannot receive any compensation for his services as Legislator while he holds the position with the Federal Government referred to above.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By   s/J.C. Davis, Jr.
     J.C. Davis, Jr.


By   s/John Reeves
     John Reeves

JR:djm:wc


APPROVED AUG 12, 1946
s/Carlos C. Ashley
FIRST ASSISTANT
ATTORNEY GENERAL

Approved Opinion Committee By  s/BWB  Chairman